**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Tommy L. BEAVER,
Defendant-Appellant.**

**No. WD 31596.**

Missouri Court of Appeals,
Western District.

Aug. 25, 1981.

James W. Fletcher, Public Defender, John Kurtz, Asst. Public Defender, Kansas City, for defendant-appellant.

John Ashcroft, Atty. Gen., Jefferson City, Darrell Panethiere, Asst. Atty. Gen., Kansas City, for plaintiff-respondent.

Before KENNEDY, P. J., and SHANGLER and WASSERSTROM, JJ.

WASSERSTROM, Judge.

Defendant appeals his conviction for robbery second degree and armed criminal action. Punishment was assessed at five years on the robbery count and four years on that for armed criminal action.

On the morning of January 11, 1979, an armed robber appeared in Rydgell's Tap Room. Those present were the manager, Leonard Covington, George Beaver (brother of the defendant), and a friend of the Beavers whose first name was Bernard. The partially masked robber held a gun to Covington's head and took from him $405 cash and two pistols. Covington identified defendant as the robber, but neither George Beaver or Bernard did so. Defendant of-

fered an alibi defense and presented two witnesses who placed him elsewhere during the period of the robbery.

On this appeal, defendant makes the following points: (1) that the new Criminal Code prohibits defendant's conviction for both robbery and armed criminal action; (2) that his conviction for both offenses violates the federal constitutional provision against double jeopardy; (3) that the court erred in permitting Benita Shepard, one of defendant's witnesses, to be cross-examined by use of a photocopy rather than the original of her extra-judicial statement; and (4) that the court improperly refused to permit defendant to impeach Covington by testimony of Thelma Coppage.

■ The fourth of those points requires reversal of the convictions and remand for new trial. Defendant offered to prove through his sister, Thelma Coppage, that Covington had called her two or three days after the robbery saying that he would drop the charges against defendant "if she paid him $400.00 and a little extra, not specifying what the extra would be, and gave him a gun, not specifying what type of gun." The state objected on the grounds of lack of relevancy, failure of the defense to lay a proper foundation, and failure of the defense to supply Coppage's name as part of pretrial discovery. The trial court rejected the offer of proof without specifying any ground for that ruling.

The Coppage testimony was properly offered as an attack upon Covington's credibility, going to his motive for testifying. A somewhat similar situation arose in *State v. Eckler*, 106 Mo. 585, 17 S.W. 814 (1891) where the defendant asked the prosecutrix in a seduction case whether she had ever authorized anyone to accept money to settle the case or whether she had offered to take money to dismiss it. The state objected to the question and the objection was sustained. On appeal, the Supreme Court held that ruling to have been erroneous, saying: "the jury had a right to know what motives and influences operated upon her mind in the prosecution of the case, in order to know what weight to give her testimony."

Similar rulings have been made in other jurisdictions: *Commonwealth v. Bell*, 4 Pa. Super. 187 (1897); *People v. Delbos*, 146 Cal. 734, 81 P. 131 (1905); *State v. Martinsen*, 198 Iowa 1325, 201 N.W. 1 (1924); *People v. Bouderioyni*, 299 Ill. 96, 132 N.E. 501 (1921). *See also*, 2 Wharton's Criminal Evidence 399, Sec. 460 (13th Ed. 1972); Annot., Preventing or limiting cross-examination of prosecution's witness as to his motive for testifying, 62 A.L.R.2d 610 (1958).

The attorney general argues that Coppage's testimony, even if accepted as true, is irrelevant and does not tend to discredit Covington, for it would merely go to show an effort by Covington to obtain restitution of that which was wrongfully taken from him. An identical argument was presented and rejected in *People v. Pizzi*, 94 Ill.App.3d 415, 50 Ill.Dec. 30, 33, 418 N.E.2d 1024, 1027 (1981). *Pizzi* was a prosecution for conspiracy, theft and theft by deception. The defendants attempted to show that the prosecuting witness had offered to have the charges dropped in return for a payment of money. The rejection of that testimony was held to be reversible error. Following *Bouderioyni, supra* (which was a prosecution for child molestation), the appellate court refused to make any distinction on the ground that the prosecuting witness in *Pizzi* was merely attempting to get restitution.

Even if it were to be said that an attempt by a prosecuting witness to obtain restitution does not serve to impeach his testimony, nevertheless Coppage's testimony would have tended to show action by Covington beyond that. The offer of proof was that Covington demanded "$400.00 and a little extra, not specifying what the extra would be." If this testimony be believed, then Covington was attempting to extort something beyond mere restitution.

■ The state also argues that the offer of Coppage's impeachment testimony was improper for the reason that the defense did not lay a proper foundation by interrogating Covington concerning the alleged telephone conversation. The courts throughout the country are divided with

respect to whether such a foundation is necessary before the impeaching testimony can be admitted. Annot., Necessity and sufficiency of foundation for discrediting evidence showing bias or prejudice of adverse witness, 87 A.L.R.2d 407 (1963). Missouri follows the rule that no foundation is required where the impeachment relates to conduct rather than prior utterances of the witness sought to be impeached. *Barraclough v. Union Pacific R. Co.*, 331 Mo. 157, 52 S.W.2d 998 (1932); *Moe v. Blue Springs Truck Lines, Inc.*, 426 S.W.2d 1 (Mo.1968). Accordingly, the impeaching testimony here was not barred simply because Covington had not been interrogated on this subject.

The attorney general also argues that the impeaching testimony was properly rejected because Coppage had not been disclosed as a witness in response to pretrial discovery, as required by Rules 25.05 and 25.08. In response to that argument, defendant states that defense counsel did make full disclosure to the state as soon as the information came to his attention. The record shows that at the time of the offer of proof, defense counsel stated to the court: "I, myself, only became of this—became aware of this testimony some five to ten minutes before I advised Mr. Hall [the prosecutor] of it * * *." In rejoinder to that, the attorney general argues that the trial court was not obligated to believe the last quoted statement by defense counsel.

We are loath to conclude that the trial court disbelieved a statement made by defense counsel in his capacity as an officer of the court. In the absence of any reason given by the trial court for rejecting the Coppage testimony, and in view of the number of grounds given by the prosecutor for his objection, it is unnecessary to conclude and we are disinclined to make the speculative inference that the rejection by the court was on the basis of disbelief in the statement of defense counsel.

But even if it were to be assumed that the defense did become aware of the availability of the Coppage testimony at some earlier date, so that there would be a violation of duty to disclose, nevertheless a complete exclusion of the Coppage testimony would not have been called for. Nondisclosure in violation of the discovery rules does not necessarily require exclusion of the evidence in question. That is a matter of discretion to be decided upon whether the failure to disclose results in some fundamental unfairness. *State v. Helms*, 559 S.W.2d 587 (Mo.App.1977). Any surprise with respect to the Coppage testimony could adequately have been cured by granting a recess or adjournment to the prosecuting attorney in order to interview the witness. *State v. Helms, supra; State v. Petree*, 568 S.W.2d 546 (Mo.App.1978). The fact that the Coppage testimony was not offered until after the state had closed its case is not a material consideration. The court if necessary could have given leave to the prosecuting attorney to reopen. No fundamental unfairness would have been caused to the state by admitting the Coppage testimony.

Defendant's points 1 and 2 are controlled by *State ex rel. Westfall v. Ruddy*, 621 S.W.2d 42 (Mo. banc 1981). *Ruddy* holds that under the new Criminal Code, which became effective January 1, 1979 (before the date of the occurrence in this case), the jury must be instructed that it cannot convict of both armed criminal action and also the underlying felony. Upon the retrial of this case, the jury will of course be instructed in accordance with that opinion.

Defendant's point on appeal No. 3 need not be discussed, since the use of the copy rather than Shepard's original statement will not likely recur on retrial.

Reversed and remanded for a new trial.

All concur.