**George MERCER, Movant-Appellant,**

v.

**STATE of Missouri, Respondent.**

No. 12954.

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 15, 1984.

As Modified March 8, 1984.

Motion For Rehearing or Transfer
Denied March 8, 1984.

Application to Transfer Denied
April 16, 1984.

James D. McNabb, Asst. Pub. Defender, Springfield, for movant-appellant.

John Ashcroft, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for respondent.

HOGAN, Judge.

In this postconviction proceeding pursuant to Rule 27.26, movant George (Tiny) Mercer (defendant) sought to vacate a death sentence imposed upon conviction of capital murder, as defined and denounced by § 565.001, RSMo 1978.[1] The trial court denied relief and the defendant has appealed.

The appalling facts of the case need not be recited in detail. The direct appeal was adjudicated by our Supreme Court; that court affirmed the judgment and sentence; its opinion is reported as *State v. Mercer*, 618 S.W.2d 1 (Mo. banc 1981), cert. denied, 454 U.S. 933, 102 S.Ct. 432, 70 L.Ed.2d 240 (1981). The State averred and had substantial evidence that the defendant raped, sodomized and eventually strangled a wretchedly hapless and inoffensive young female during the early morning hours of August 31, 1978, and disposed of her body by dumping it into a field as if it were an animal carcass.

Because the defendant received a sentence of death, we have examined our jurisdiction. We find that jurisdiction of an appeal in a postconviction proceeding under Rule 27.26 is not dependent upon the punishment imposed in the underlying criminal case. We reach the same conclusion we reached in *Bryant v. State*, 604 S.W.2d 669, 671–72[1] (Mo.App.1980); and we are not deterred by the fact that in the principal action, a death sentence was imposed. A proceeding under Rule 27.26 is and has always been an independent proceeding adjunctive but collateral to the criminal case. *Layton v. State*, 500 S.W.2d 267, 269 (Mo. App.1973). No conclusion we reach nor any action we take can become final without affording the defendant a fair opportunity to invoke the jurisdiction of the highest court of this State, and the right to invoke the jurisdiction of that court is guaranteed by the Constitution of this State. Mo. Const. art. V, § 10; Rule 83.03; *State v. White*, 363 Mo. 83, 248 S.W.2d 841, 842 (1952). We have jurisdiction of the cause.

1. References to statutes and rules are to RSMo 1978 and to Missouri Rules of Court (9th ed. 1978), except where otherwise noted.

■ We must address one point which has been articulated only indirectly. Counsel for the defendant would have it that in capital murder cases, the defendant has a federally protected right to instructions on lesser graded or necessarily included offenses, and that that right cannot be waived. We agree that in a capital murder case, the defendant has a due process right to such instructions if they are warranted by the evidence. *Hopper v. Evans,* 456 U.S. 605, 611–12, 102 S.Ct. 2049, 2052–53, 72 L.Ed.2d 367, 373 (1982); *Beck v. Alabama,* 447 U.S. 625, 636–37, 100 S.Ct. 2382, 2388–89, 65 L.Ed.2d 392, 401–402 (1980). The parties seem to be proceeding on the assumption, however, that the jury was not instructed on any lesser graded offenses. By ordering the record supplemented, we have determined that the jury was instructed precisely as required by our instruction practice, with one exception. To be more specific, the trial court instructed the jury on capital murder under MAI–CR.2d 15.02 (Instruction No. 5); on conventional second-degree murder under MAI–CR.2d 15.14 (Instruction No. 6), and on conventional manslaughter under MAI–CR.2d 15.18 (Instruction No. 7).

The trial court tendered an instruction on first-degree murder (felony murder) in the commission of a rape under MAI–CR.2d 15.10. Such instruction was not only refused but positively objected to by defendant's counsel. Although we believe such an instruction was required by MAI–CR.2d 15.-00.3 because § 556.220, RSMo.1969, governed what was a lesser included offense when this homicide was committed, see *State v. Baker,* 636 S.W.2d 902, 904 (Mo. banc 1982), it is clear that under Missouri law, the refusal of the tendered instruction amounted to a waiver. *State v. Coleman,* 660 S.W.2d 201, 209 (Mo.App.1983). Moreover, recent decisions of the United States Supreme Court suggest that failure to object seasonably to instructional error may itself be a bar to the later assertion of such error even though the error is of constitutional dimension. *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). Nevertheless, because this is a capital case, we prefer to take and consider the issues actually presented and decided at the hearing on the postconviction motion, which were: a) whether trial counsel's decision to refuse an instruction on first-degree murder was so ill-conceived as to constitute ineffective assistance of counsel, and b) whether the defendant effectively agreed to that waiver.

■ In connection with defendant's claim that he was denied his Sixth Amendment right to the effective assistance of counsel, we note that there are a number of precedents which hold that "trial strategy" is ordinarily not subject to review on a motion for postconviction relief. See, e.g., *Davis v. State,* 600 S.W.2d 613, 614[4] (Mo. App.1980). Nevertheless, we believe that in a capital case, it is proper to consider whether counsel's decision to allow the case to be submitted without an instruction on first-degree murder constituted such a serious dereliction of duty as to result in an obvious miscarriage of justice.

The defendant was represented by two lawyers, Mr. Cenobio Lozano and Mr. Nicholas Fiorella. Mr. Lozano maintains an office at Harrisonville; Mr. Fiorella maintains an office at Springfield. Mr. Lozano is well known to this court. He has had a good deal of experience in the defense of serious criminal cases. He was lead counsel during the trial.

At the hearing on the motion for postconviction relief, Mr. Lozano testified that his decision not to ask for an instruction on first-degree murder was to some degree motivated by his anticipation of erroneous rulings on the admission of evidence. The trial court was free to disbelieve this part of Mr. Lozano's testimony, and in our view, the record refutes his testimony. The whole record considered, Mr. Lozano's thinking at the trial is summed up in the following quoted testimony. On direct examination, Mr. Lozano testified thus:

\*    \*    \*    \*    \*    \*

Q. Did you also feel you were entitled to the felony murder instruction as a lesser offense of capital murder?

A. Yes.

Q. And, having this in mind what were your reasons for not submitting a felony murder. [sic]

A. *Two main reasons.* The first one [was] that I didn't want the jury to have an instruction before them that would, as a declaration from the Court of the applicable law in the case include the crime of rape, and, secondly, ... as far as the defense was concerned ... *we wanted to present the jury with it's either capital murder or its nothing. That was our basic defense.*

If the jury ... believed ... the chief prosecuting witness then it would have been capital murder. That's the way we wanted to present it.

However, if they disbelieved ... John Campbell and believed the witness that we brought in from ... Columbia, Missouri, on the issue of the, uh, the victim's, uh, body's condition when it was found *then I thought that we would have a* [sic] *acquittal.* (Emphasis ours.)

There was, in our view, a reasonable basis for this appraisal of the evidence. John Allen Campbell, the State's principal fact witness, apparently drank a good deal and had suffered a head injury which required his taking medication. He was, in addition, a co-participant in the gang rape. He was not, on the face of the matter, an inherently believable witness.

And, it must be understood that the victim's body, or the remains of her body, were found in an advanced state of decomposition. The defendant had evidence, both from a Kansas City police officer and from a wildlife expert from Columbia, Missouri, that the victim's body had been mummified at some location other than the place where she was found. If these witnesses were believed, a jury could have found that the victim was not killed in Cass County as the State contended and could have found that her body was not disposed of as Campbell maintained. The testimony of these two witnesses was very direct and positive.

■ We cannot say that defense counsel's advance evaluation of the evidence fell short of that appraisal which a reasonably competent attorney would make in similar circumstances. Further, an instruction on our first-degree felony murder statute, § 565.003, assuming it was warranted by the evidence, would have permitted the jury to find defendant guilty if it found he had caused the victim's death by strangling her while he was raping or attempting to rape her. A life sentence, but not a death sentence, would have been permitted. MAI–CR.2d 15.10. Given the degree of violence and sexual abuse involved in the case, it was not unreasonable to suppose that the giving of MAI–CR.2d 15.10 would virtually have precluded an acquittal. In reality, we are being asked to speculate whether the defendant would have fared any better if this lesser offense instruction had been given. Neither this nor any other temporal court could say what the jury might have done, and for that reason we cannot say defendant was denied the effective assistance of counsel. See *State v. Battles*, 585 S.W.2d 213, 214[3, 4] (Mo.App. 1979).

■ More important is the fact that the record shows positively that both counsel and the defendant waived whatever right defendant had to an instruction on first-degree murder in the commission of a rape, not once, but twice. Even a plea of guilty, which waives most of the thirteen constitutionally guaranteed rights which accrue to a criminal defendant under the doctrine of selective incorporation,[2] constitutes a valid and knowing waiver of those

2. The enumeration is Professor Israel's, not ours. See Israel, Selective Incorporation: Revisited, 71 Geo.L.J. 253, n. 2 (1982).

rights if the record reflects that the waiver was knowingly and intelligently made. *Boykin v. Alabama,* 395 U.S. 238, 242–45, 89 S.Ct. 1709, 1711–13, 23 L.Ed.2d 274, 279–281 (1969). Both at the conclusion of the trial and on the following day—before the jury was instructed—the trial court announced that it believed the state of the law at the time compelled the giving of instructions on first-degree murder (felony), second degree murder and conventional manslaughter. The record affirmatively and positively shows that defendant's counsel actually objected to the giving of an instruction on first-degree murder; twice the defendant positively stated in open court that Mr. Lozano had advised him of his "right" to an instruction on first-degree felony murder and that he *waived* any error with respect to the court's refusal to give them. We conclude the defendant's waiver was both knowing and intelligent.

The defendant has advanced two other points of minimal significance, which we have considered and find to be either refuted by the record or wholly without merit.

The judgment of the trial court is affirmed.

MAUS, P.J., and PREWITT, J., concur.

## ON ALTERNATIVE MOTION FOR REHEARING OR FOR TRANSFER

### PER CURIAM:

The defendant has filed a vigorous motion for rehearing, or alternatively, for transfer to the Supreme Court, as provided by Rule 84.17. As anticipated, counsel has renewed his complaint that the trial court failed to comply with 27.26(i) by making "specific findings of fact and conclusions of law" as required by *Fields v. State,* 572 S.W.2d 477, 483 (Mo. banc 1978). In *Fields,* our Supreme Court held:

"In ruling on the motion, whether with or without an evidentiary hearing, the court shall follow rule 27.26(i) and make findings of fact and conclusions of law on all issues presented. Only if that is done can the appellate court make the kind of review contemplated by rule 27.-26(j)."

Id., 572 S.W.2d at 483.

It is readily apparent from the quoted language that our Supreme Court did not intend to require a trial court to erect a strawman at which counsel may throw bricks at some second-guessing stage of the proceeding, and indeed counsel for defendant has not suggested wherein the non-specificity of the findings consists. Our inspection of the findings discloses that the trial court considered and ruled each ground properly cognizable in a proceeding for postconviction relief. The rule consistently followed by the Court of Appeals in these cases is that when the trial court has made findings on all issues sufficient to enable the reviewing court to review the movant's contention, the requirements of Rule 27.26(i) have been satisfied. *Jones v. State,* 604 S.W.2d 607, 609 (Mo. App.1980), and see *Thomas v. State,* 512 S.W.2d 116, 121 (Mo. banc 1974). Moreover, remand is not required for further findings and conclusions if those that appear in the record are sufficient for the reviewing court to determine the correctness of the trial court's action. *Jones,* 604 S.W.2d at 609. Further, as in other court-tried actions, the fact that the trial court may have assigned incorrect or erroneous reasons for its decision is immaterial if the correct result was reached. Id., 604 S.W.2d at 609; *Durham v. State,* 571 S.W.2d 673, 677 (Mo.App.1978).

The other point which we did not reach in the principal opinion was the defendant's attempt to raise a point unmistakably raised on direct appeal, in a slightly sufficient guise. Citing *Davis v. Georgia,* 429 U.S. 122, 97 S.Ct. 399, 50 L.Ed.2d 339 (1976), which applied the rule stated in *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). Defendant now attempts to attack the jury composition by saying that counsel was ineffective because he did not "object to questioning on voir dire that exceeded the proper scope of voir dire in order to ascertain

whether veniremen were irrevocably committed to vote against the death penalty regardless of the facts and circumstances in evidence."

It is obvious that the composition of the jury as being prosecution-prone or irrevocably committed against the death penalty was considered at length on the direct appeal. See Part III.A. of *State v. Mercer*, 618 S.W.2d 1, 6–8 (Mo. banc 1981). Whatever objection defendant now claims his trial counsel should have made during the voir dire examination of the veniremen, the opinion of our Supreme Court shows no prejudice resulted. Defendant must establish prejudice to establish ineffective assistance of counsel. *Burton v. State*, 641 S.W.2d 95, 100 (Mo. banc 1982); *Seales v. State*, 580 S.W.2d 733, 736 (Mo. banc 1979). Because it has been conclusively adjudicated that the composition of the jury did not violate the *Witherspoon* principle, defendant cannot establish prejudice. The point is without merit. The motion for rehearing is denied; the alternative motion for transfer is denied.

All of the Judges concur.